UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ROXANNE L. RYAN, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>    Defendant. ) | CAUSE NO. 1:12-CV-44 |

## OPINION AND ORDER

Plaintiff Roxanne Ryan appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED for further proceedings in accordance with this Opinion.

### I. PROCEDURAL HISTORY

In June 2007, Ryan was found disabled as of November 26, 2003; her period of disability, however, was terminated when she returned to full-time work in June 2006. (Tr. 141-42, 169.) Two years later Ryan stopped working and filed the instant application for DIB, alleging disability as of October 30, 2008. (Tr. 48, 132-38, 174.) The Commissioner denied her application initially and upon reconsideration, and Ryan requested an administrative hearing. (Tr. 79-116.) On May 12, 2010, a hearing was conducted by Administrative Law Judge ("ALJ")

---

[1] All parties have consented to the Magistrate Judge. (Docket # 16); *see* 28 U.S.C. § 636(c).

John Pope, at which Ryan (who was represented by counsel) and a vocational expert testified. (Tr. 43-78.)  On September 22, 2010, the ALJ rendered an unfavorable decision to Ryan, concluding that she was not disabled because she could perform her past relevant work as a wire worker and assembler. (Tr. 26-38.)

After the ALJ issued its decision, Ryan submitted additional evidence to the Appeals Council and requested the ALJ's decision be reviewed. (Tr. 18-19.)  The Appeals Council, however, denied her request for review, at which point the ALJ's decision became the final decision of the Commissioner. (Tr. 10-14.)

Ryan filed a complaint with this Court on February 13, 2012, seeking relief from the Commissioner's final decision. (Docket # 1.)  In this appeal, Ryan advances three arguments: (1) that the Appeals Council erred by failing to consider new and material evidence; (2) that the ALJ improperly discounted her credibility; and (3) that the ALJ failed to properly consider her obesity when assigning her residual functional capacity ("RFC"). (Mem. in Supp. of Pl.'s Mot. for Summ. Reversal 7-14.)

## II.  FACTUAL BACKGROUND[2]

### A.  Background

At the time of the ALJ's decision, Ryan was fifty-one years old; had a high school education and two years of college; and possessed work experience as an assembler, stocker, packer, strip/stager, and machine operator. (Tr. 47, 52, 132, 175, 182-90.)  Ryan alleges that she became disabled due to various impairments, including chronic obstructive pulmonary disease (COPD), diabetes, knee degenerative arthritis, foot complications, a heart condition, depression,

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 477-page administrative record necessary to the decision.

anxiety, and sleep apnea. (Tr. 174.)

At the hearing, Ryan, who is 4 feet 10 inches tall and weighed 285 pounds, testified that she lives with her husband and sister and uses food stamps. (Tr. 63, 66-67.) The last time she drove was six months prior to the hearing. (Tr. 57.) She stated that she lost her last job in October 2008, after which she received eight months of unemployment benefits; she testified that she has unsuccessfully looked for work since October 2008. (Tr. 48-52, 67-68.)

As to her symptoms, Ryan testified that she uses a nebulizer four times a day for her breathing problems; each treatment takes twenty minutes. (Tr. 53.) After a treatment, Ryan stated that she feels "shaky and tired" and usually naps for an hour; therefore, she takes four one-hour naps per day. (Tr. 53-54.) Ryan complained of pain in her knees at a level "five" on a ten-point scale when taking medication, which causes her some fatigue as a side effect; she also reported carpel tunnel syndrome in her hands, which causes her to drop items. (Tr. 60-62, 68-69.) In addition, she has tingling in her feet due to diabetes and blurred vision due to her glaucoma. (Tr. 55, 57, 65-66.) She stated that she has headaches six times a month, but they subside if she sleeps for thirty minutes and takes Excedrin. (Tr. 57-59.)

With respect to her physical capacity, Ryan testified that she could stand for just ten minutes at a time, but that she has no problem with sitting. (Tr. 63-64.) She estimated that she could walk for one block, climb two stairs, and lift a gallon of milk. (Tr. 64-65.) She stated that she "[s]ometimes" uses her husband's walker due to her knee and foot pain. (Tr. 64-65.)

### B. Summary of the Relevant Medical Evidence

Ryan was diagnosed with COPD in 2003, and she quit smoking that same year. (Tr. 287.) A November 2005 MRI of her left knee revealed findings compatible with degenerative arthritis,

lateral meniscus tear, and a low-grade sprain of the medial collateral ligament. (Tr. 418-19.)

On October 3, 2008, Ryan was referred to Dr. Naveen Lal, a cardiologist, for complaints of chest pain. (Tr. 287.) Dr. Lal noted that Ryan's medication list included Xopenex nebulizers and Advair inhalers. (Tr. 289.) Ryan's physical examination results were "grossly unremarkable." (Tr. 287.)

Two months later, Michelle Croce, M.A., completed a mental status report for the state agency. (Tr. 316-22.) At the exam, Ryan reported to Ms. Croce that she had been put on a "sit down" restriction at her last job and that she thought her employer let her go because of her health problems. (Tr. 316.) Ryan stated that when she goes shopping with her husband, she rides in a motorized cart because of her knee pain. (Tr. 318.) Ms. Croce diagnosed Ryan with depressive disorder, not otherwise specified. (Tr. 322.)

On December 31, 2008, Joseph Pressner, Ph.D., a state agency psychologist, reviewed Ryan's record and opined that her mental impairments were not severe. (Tr. 323-35.)

In January 2009, Ryan saw her primary care provider, Dr. Thomas Miller, who noted that her diabetes was poorly controlled. (Tr. 372.) He instructed her to return in four months. (Tr. 372.)

In February 2009, Dr. Rowena Yu completed an internal medicine report for the state agency. (Tr. 344-47.) Ryan reported to Dr. Yu that her COPD attacks worsen with exercise and exposure to dust, strong fumes, and hot or cold weather. (Tr. 344.) She elaborated that she has severe attacks about once a year, but that she wheezes three times a week; she stated that she manages her COPD with an as-needed inhaler and maintenance medication. (Tr. 344.) She also complained to Dr. Yu about bilateral knee pain, which was aggravated by long walks and stairs;

Dr. Yu observed no sign of current inflammation or instability. (Tr. 344.)  Ryan estimated that she could stand for thirty minutes, walk one block, lift a gallon of milk, sit while driving for twenty minutes, and do household chores in intervals. (Tr. 344.)  Upon respiratory exam, Dr. Yu observed wheezing. (Tr. 345.)  She diagnosed Ryan with COPD well-controlled on medication, fairly controlled Type II diabetes, stable angina, anxiety, depression, syncope, bilateral knee arthritis, and morbid obesity. (Tr. 347.)  Dr. Yu noted that Ryan's morbid obesity "aggravated all of her problems," but that her ambulation was normal without an assistive device. (Tr. 347.)

On March 24, 2009, Dr. R. Bond, a state agency physician, reviewed Ryan's record and opined that Ryan could lift twenty-five pounds frequently and fifty pounds occasionally; stand or walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. (Tr. 358-65.)  This opinion was later affirmed by a second state agency physician. (Tr. 373.)

On April 29, 2009, Ryan went to the emergency room, complaining of shortness of breath, diaphoresis, and abdominal pain. (Tr. 402.)  An exam revealed diffusely diminished breath sounds and fine, diffuse expiratory wheezes. (Tr. 403.)  Her condition improved after a nebulizer treatment, and she was diagnosed with an exacerbation of COPD and acute dyspnea, probably secondary to COPD exacerbation. (Tr. 405.)

In May 2009, Ryan returned to Dr. Miller. (Tr. 371.)  He adjusted her diabetes medication and otherwise noted no remarkable findings. (Tr. 371.)  Ryan returned to Dr. Miller in June, at which time he observed that her diabetes was under much better control. (Tr. 379.)

On November 8, 2009, Ryan again presented to the emergency room, complaining of head pain and pressure, lightheadedness, and vertigo for the past three days. (Tr. 379.)  She was diagnosed with acute occipital headache and bilateral neuralgia. (Tr. 347.)

In January 2010, Dr. Miller documented that Ryan's diabetic condition was under good control, and a review of systems indicated no additional positive findings. (Tr. 377.) Two months later, however, Dr. Miller wrote that Ryan's diabetes was under poor control, but that she had run out of her medication; he provided her with samples. (Tr. 376.)

### III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.*  Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).  Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV.  ANALYSIS

### A.  *The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.*  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision

On September 22, 2010, the ALJ issued the decision that ultimately became the Commissioner's final decision. (Tr. 26-38.)  He found at step one of the five-step analysis that Ryan had not engaged in substantial gainful activity since her alleged onset date and at step two that her diabetes mellitus, chronic obstructive pulmonary disease, and obesity were severe impairments. (Tr. 28.)  At step three, the ALJ determined that Ryan's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 31.)

Before proceeding to step four, the ALJ determined that Ryan's symptom testimony was not reliable to the extent it was inconsistent with the following RFC:

> [T]he claimant has the residual functional capacity to perform light work . . . involving avoidance of concentrated exposure to pulmonary irritants.

(Tr. 32.)  Based on this RFC and the VE's testimony, the ALJ concluded at step four that Ryan was able to perform her past relevant work as a wire worker and assembler. (Tr. 37.) Accordingly, Ryan's claim for DIB was denied. (Tr. 38.)

### C. The Appeals Council Erred When It Concluded That Ryan's Prescription for a Quad Cane Was Not "New and Material" Evidence Related to the Relevant Period

After the ALJ rendered his decision on September 22, 2010, Ryan submitted two additional pieces of evidence to the Appeals Council for review: (1) a prescription for a quad cane dated January 10, 2011, from Dr. Miller (Tr. 459); and (2) and records from emergency room visits in July and September 2011 concerning chest, neck, and back pain (Tr. 460-77).  The Appeals Council denied Ryan's request for review, stating that the additional evidence "is about a later time" and thus did not affect the decision about whether Ryan was disabled on or before

8

September 22, 2010. (Tr. 11.)  Ryan asserts that the Appeals Council's determination was erroneous with respect to the quad cane prescription, arguing that it corroborates her allegations of significant limitations in standing and walking during the relevant period and evidences the severity of her degenerative knee condition.

> The applicable regulation provides:
>
> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.  The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.  It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b).  "Pursuant to the above language, the Appeals Council must determine (i) whether the proffered new evidence relates to the proper time period and (ii) whether the evidence is 'new' and 'material.'"  *Binzen v. Barnhart*, No. 01 C 2716, 2002 WL 31324061, at *6 (N.D. Ill. Oct. 16, 2002) (citing *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997)); *see Farrell v. Astrue*, __ F.3d __, 2012 WL 3686383, at *3 (7th Cir. Aug. 28, 2012) ("The Social Security Administration regulations require [the Appeals Council] to evaluate 'new and material evidence' in determining whether the case qualifies for review."); *Getch v. Astrue*, 539 F.3d 473, 483-84 (7th Cir. 2008).

"If the Appeals Council answers both of these questions in the affirmative it must then determine whether the ALJ's decision is contrary to all of the evidence, i.e., the evidence before the ALJ and the new and material evidence submitted to the Appeals Council." *Binzen*, 2002 WL 31324061, at *1.  "If the Appeals Council denies review at this stage—essentially reasoning that all of the evidence does not undermine the ALJ's decision—then the Council's decision is

unreviewable," *id*. (citing *Perkins*, 107 F.3d at 1294), provided, however, that the refusal does not rest on a mistake of law, such as a determination that the evidence newly submitted to the Appeals Council was not material to the disability determination. *Eads v. Sec'y of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993).

Here, the Appeals Council's decision states that it "considered . . . the additional evidence . . . [and] found that this information does not provide a basis for changing the [ALJ's] decision." (Tr. 11.) More particularly, the Appeals Council penned:

> All of the medical evidence . . . pertains to the period after which the [ALJ] ruled. The [ALJ] decided your case through September 22, 2010. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 22, 2010.

(Tr. 11.)

The parties do not dispute that the cane prescription was "new" to the administrative record at the time of Ryan's application to the Appeals Council since it was written in January 2011, approximately three months after the ALJ's decision. *See Farrell*, 2012 WL 3686383, at *4. The parties' disagreement, rather, focuses on whether it relates to the proper time period and the materiality requirement. "'[M]ateriality' means that there is a 'reasonable probability' that the Commissioner would have reached a different conclusion had the evidence been considered . . . ." *Perkins*, 107 F.3d at 1296 (citing *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993)).

"Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision and therefore does not meet the materiality requirement." *Getch*, 539 F.3d at 484; *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (same); *McCurrie v. Astrue*, No. 09 cv 3371, 2010 WL 333696, at *5-6 (N.D. Ill. Jan. 25, 2010) (denying a remand where the

10

purportedly new evidence, which spoke only to the claimant's current back condition, postdated the ALJ's decision by nearly ten months). Evidence suggesting that a claimant's impairments have worsened may form the basis for a new application but are *not* a basis to reverse the decision on a previously submitted application. *Getch*, 539 F.3d at 484; *Perkins*, 107 F.3d at 1296.

Here, the Commissioner points out that the cane prescription is dated more than three months after the ALJ's decision and "speaks only in the present tense." (Resp. Br. 14.) Specifically, the prescription states: "[Ryan] needs to use quad cane due to degenerative disease of back and knees causing instability." (Tr. 459.) The Commissioner argues that the prescription does not "relate back" to Ryan's condition as of September 22, 2010, emphasizing that no medical source during the relevant period indicated that Ryan needed an assistive device for ambulation. (*See, e.g.*, Tr. 347.) The Commissioner further posits that "[i]f anything, the fact that [Ryan] did not have a cane prescription until January 2011 indicates that her condition was not as severe as alleged before that time." (Resp. Br. 14.)

But, as Ryan emphasizes, the ALJ's decision that she could perform light work unequivocally rests in part on the determination that her degenerative knee disease was "nonsevere" and caused her "no ongoing limitations" (Tr. 28-29), that her testimony she can stand for just ten minutes at a time and walk one block was "not credible" (Tr. 34), that she did not need a medical assistive device for ambulation (Tr. 36), and that "no restrictions [were] recommended by any treating source" (Tr. 36). *See Farrell*, 2012 WL 3686383, at *4. Ryan's prescription for a quad cane from her treating physician just three months after the ALJ's decision is arguably relevant to the severity of her knee condition and her standing and walking

11

limitations during the period in question. *See id.* (finding that where the ALJ's decision unequivocally rested in part on the fact that a fibromyalgia diagnosis had not been confirmed, a diagnosis of fibromyalgia assigned one month after the ALJ issued his decision "fill[ed] in that evidentiary gap" and thus constituted "material" new evidence). The prescription "builds on" Ryan's knee degenerative arthritis, diabetic neuropathy, and obesity conditions, all of which are long-standing conditions and the source of her complaints of limitations. *Id.*; *see Bush v. Astrue*, 571 F. Supp. 2d 866, 874-75 (N.D. Ill. 2008) (concluding that an eye examination revealing vision impairments and an EMG test report showing carpel tunnel syndrome that postdated the ALJ's decision by three months were "material" where plaintiff had been complaining of these impairments for years); 1 SOCIAL SECURITY DISABILITY CLAIMS PRACTICE & PROCEDURE § 17:39 (2nd ed.) ("If a condition is related to, or results from, conditions considered by the ALJ, new evidence regarding such conditions should be considered by the [Appeals Council] on appeal . . . .").

Moreover, the cane prescription directly undermines the ALJ's observations concerning her lack of a need of an assistive device and the lack of restrictions from a treating source, and thus "fills in the evidentiary gap" in that respect. *See Farrell*, 2012 WL 3686383, at *4. Given the chronic nature of Ryan's impairments and the minimal lapse of time between the prescription and the ALJ's decision, the Court concludes that the quad cane prescription is relevant to the period on or before September 22, 2010, and meets the definition of "material." *See Bush*, 571 F. Supp. 2d at 875 (referring to three months as a "minimal lapse in time" between the ALJ's decision and the date of the additional evidence).

Moreover, in this instance the error is not necessarily harmless. *See Farrell*, 2012 WL

3686383, at *5 (finding that the Appeals Council's failure to find a diagnosis of fibromyalgia one month after the ALJ's decision "material" was not mere harmless error); *see generally Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (concluding that an error is harmless when it "would not affect the outcome of the case"). Ryan's standing and walking limitations affect the ALJ's RFC determination and, in particular, whether she can perform "light" work, as the ALJ concluded, in contrast to "sedentary" work. Generally, "light" work may require up to six hours of standing or walking in an eight-hour workday, while "sedentary" work requires just two hours of standing or walking. *Clifford*, 227 F.3d at 868 n.2; 20 C.F.R. § 404.1567; SSR-96-9p, 1996 WL 374185, at *3. If Ryan could perform only "sedentary" work, she may not be able to perform her past relevant work because the VE assessed it as "light." (Tr. 73.) At step five then, she would be deemed disabled under the grids since she is over the age of fifty and the VE testified that she has no transferable skills. (Tr. 76-77); *see* SSR 96-9p, 1996 WL 374185, at *2. Therefore, the ALJ's conclusion concerning Ryan's ability to stand and walk during an eight-hour workday is pivotal to her disability determination.

In short, because the prescription for a quad cane written by Ryan's treating physician approximately three months after the ALJ issued his decision was "new and material" evidence relating to the relevant period, the case will be remanded to the Commissioner for examination of the record and this additional evidence.**4**

---

[4] Because a remand is warranted based on Ryan's argument concerning "new and material" evidence, the Court does not need to reach her remaining two arguments.
   Nevertheless, in a brief review of Ryan's assertions challenging the ALJ's credibility determination, the Court notes that several of them have some merit. For example, the ALJ discounted Ryan's report of side effects from the nebulizing treatments on the basis that she never reported them to her physicians. (Tr. 34.) But Ryan testified at the hearing that she *had* complained to Dr. Miller of feeling shaky and fatigued for an hour after each nebulizer treatment and he told her it was "normal for that medication to do that[.]" (Tr. 53-54.) Thus, the ALJ mischaracterized the record in this respect. In addition, the ALJ discounted Ryan's subjective complaints on the basis that her COPD was "present at approximately the same level of severity prior to the alleged onset date" when

## V.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion.  The Clerk is directed to enter a judgment in favor of Ryan and against the Commissioner.

SO ORDERED.

Enter for this 9th day of October, 2012.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

she was still employed. (Tr. 35.)  But the ALJ disregarded that Ryan's nebulizer treatments began in 2008 and increased in dosage and frequency (up to four times a day) after her alleged onset date. (Tr. 53-54, 289, 344, 379.) Also, the ALJ seemingly made a knee-jerk analysis when discounting Ryan's credibility on the basis of her receipt of unemployment benefits without first inquiring what type of work (sedentary, part-time, or full-time) that she was seeking. (Tr. 36, 52, 67-68); *see ,e.g.*, *Miocic v. Astrue*, No. 2012 WL 4006704, 2012 WL 4006704, at *12 (N.D. Ill. Sept. 5, 2012).  Therefore, the ALJ is encouraged upon remand to revisit Ryan's credibility determination in these respects.